DISTRICT OF MINNESOTA

| | |
|---|---|
| Max A. Medcqm, | Civil No. 23-2286 (DWF/ECW) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| United States Department of State, Jane Doe, and John Doe, | |
| Defendants. | |

## INTRODUCTION

This matter is before the Court on Defendant United States Department of State's ("State Department") motion to dismiss.[1] (Doc. No. 49.) *Pro se* Plaintiff Max Medcqm opposes the motion (Doc. Nos. 56-57) and also moves for sanctions (Doc. No. 80). For the reasons set forth below, the Court grants the State Department's motion to dismiss and denies Medcqm's motion for sanctions.

## BACKGROUND

In September 2020, Medcqm flew to Kenya, on his way to Rwanda. (Doc. No. 36 ("SAC") ¶ 39.) When he arrived in Kenya, he was told that he needed to pay $300 to get an updated COVID-19 testing certificate. (*Id.* ¶ 41.) Medcqm declined to get a new certificate and decided to travel to Rwanda by bus. (*Id.* ¶ 42.) Because the border between Uganda and Rwanda was closed, Medcqm decided to stay in Kenya for several months until his passport was close to expiring. (*Id.* ¶¶ 44-47.)

---

[1] The State Department also represents Jane Doe and John Doe in their official capacities.

1

Medcqm made an appointment to get a new passport.  (*Id.* ¶ 47.)  Medcqm is deaf, and when he arrived at the Embassy in Nairobi, he alleges he was denied reasonable accommodation to assist him in communicating with employees at the Embassy.  (*Id.* ¶¶ 37, 50-52.)  Medcqm instead had to communicate using pen and paper.  (*Id.* ¶ 65.)  Medcqm further asserts that the Embassy employee, Jane Doe, was "pretentious and aggressive" and favored white citizens over him, who is Black.  (*Id.* ¶¶ 66-72.)

While Medcqm wanted a full-validity passport, he was granted a three-month passport, set to expire in August 2021.  (*Id.* ¶¶ 87-89.)  Medcqm tried to express to Jane Doe that he wanted a passport for a longer term, but she refused to answer his questions.  (*Id.* ¶ 94.)  Around the same time, Medcqm requested help from the Embassy to return to the United States.  (*Id.* ¶ 110.)  The Embassy directed Medcqm to fill out certain paperwork for a repatriation loan.  (*Id.* ¶ 114.)  Medcqm alleges that he was told to put "Somalia" as his current location, which was incorrect.  (*Id.*)  For that reason, Medcqm did not complete the application as he did not want to lie.  (*Id.* ¶¶ 115-17.)

In July 2021, before his passport was set to expire again, Medcqm requested an appointment to renew his passport.  (*Id.* ¶ 127.)  When he arrived at the appointment, Jane Doe asked Medcqm why he had not returned to the United States.  (*Id.* ¶ 130.)  Medcqm alleges that another employee, John Doe, also mistreated him and refused to communicate with him.  (*Id.* ¶¶ 158-59.)  Medcqm was then told to leave and to return another day.  (*Id.* ¶ 137.)  In August, Medcqm emailed the Embassy to request a new appointment but did not get a response.  (*Id.* ¶¶ 154-55.)

Between August 6, 2021, and November 6, 2021, Medcqm alleges that John Doe came looking for Medcqm in Dandora where he was residing. (*Id.* ¶ 165.) He alleges that John Doe said, "Max, Max, Max" in front of other people, which he describes as an "unwanted and unwarranted intrusion into his privacy." (*Id.* ¶ 172.) He further describes the encounter as threatening and alleges that he felt "fear and unwarranted intrusion." (*Id.* ¶¶ 175-76.) Medcqm believes that John Doe found where he was residing because he accessed Medcqm's passport information. (*Id.* ¶ 191.) Shortly after the encounter, Medcqm fled because he believed Kenyan police officers were searching for him as a result of John Doe's actions. (*Id.* ¶ 201.)

Over a year later, in February 2023, Medcqm emailed the Embassy again, asking for help. (*Id.* ¶ 209.) The Embassy told Medcqm that they could not issue him a full validity passport because he had lost several passports before. (*Id.* ¶ 211.) But the Embassy stated that Medcqm could apply for a loan to help him return home to the United States. (*Id.*) Medcqm applied and received a repatriation loan. (*Id.* ¶¶ 216, 220, 223.) The loan, however, did not include funds for medication or eyeglasses. (*Id.*) Medcqm obtained a passport valid from February 22, 2023, to March 10, 2023, and he returned to the United States on February 23. (*Id.* ¶¶ 223-25.)

Medcqm now brings this action against the State Department, Jane Doe, and John Doe, asserting ten claims, including violations of the United States Constitution and

federal law.  Medcqm has amended his complaint twice and now the State Department moves to dismiss the Second Amended Complaint.  Medcqm opposes the motion.[2]

## DISCUSSION

**I.      Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.

In addition, the Court notes that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519,

---

[2]    Medcqm has submitted a variety of filings without the Court's permission and in violation of the Local Rules.  (Doc. Nos. 58, 62, 63, 64, 65, 66, 67, 68, 69, 70.)  The Court reminded Medcqm to comply with the Local Rules and request permission before filing additional briefs.  Medcqm continued to file documents without the Court's permission.  (*See* Doc. Nos. 79, 82.)  The Court will not consider any documents filed in violation of the Local Rules and without the Court's permission.  But even if the Court had considered these documents, they would not have changed the outcome of this Order.

520 (1972) (per curiam). Even so, a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## II.     Motion to Dismiss

Medcqm brings ten claims against the State Department, including claims under the First, Fourth, Fifth, and Fourteenth Amendments, civil conspiracy, and violations of the Privacy Act, Equal Credit Opportunity Act, Rehabilitation Act, and Administrative Procedure Act. The State Department argues that each claim should be dismissed either for lack of subject matter jurisdiction or failure to state a claim.

### A.     Constitutional Claims (Counts 1, 2, 3, 4, 5)

Medcqm brings several constitutional claims against the State Department under the First, Fourth, Fifth, and Fourteenth Amendments. The United States, and its agencies, are immune from suit unless the United States waives its sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity protects the United States from being sued unless Congress has expressly waived the government's immunity." *Kaffenberger v. United States*, 314 F.3d 944, 950 (8th Cir. 2003). "[T]he court's jurisdiction is limited by the scope of the waiver." *Id.*

Congress has not waived sovereign immunity for claims against the United States under the First, Fourth, or Fifth Amendments. The Court therefore dismisses these claims for lack of subject matter jurisdiction. Additionally, Medcqm cannot bring an equal protection claim under the Fourteenth Amendment against the State Department as "by its very terms, [the Fourteenth Amendment] applies only to state actors, not to federal officials." *Clutts v. Lester*, No. 20-cv-80, 2023 WL 3901489, at *4 (N.D. Iowa June 8,

5

2023). To the extent the Medcqm instead asserts an equal protection under the Fifth Amendment, that claim, as noted above, is dismissed for lack of subject matter jurisdiction.

      **B.**      **Privacy Act Claim (Counts 2 and 4)**

Medcqm mentions the Privacy Act in Counts 2 and 4. Specifically, Medcqm argues that his passport information as wrongfully disclosed in violation of the Privacy Act. Medcqm asserts that an Embassy employee, John Doe, accessed his passport information to find his address and found Medcqm in a shop near his residence. (SAC ¶ 170.) John Doe allegedly said, "Max, Max, Max" in public, which Medcqm asserts was an improper disclosure of his personal information. (*Id.* ¶¶ 172, 251.)

To plead a claim of wrongful disclosure under 5 U.S.C. § 552a(g)(1)(D), a plaintiff must allege "(1) the information released was covered under the Privacy Act as a 'record' contained in a 'system of records'; (2) an agency disclosed the information; (3) the disclosure had an adverse effect on the plaintiff; and (4) the disclosure was willful or intentional." *Doe v. United States*, 210 F. Supp. 3d 1169, 1176 (W.D. Mo. 2016) (internal quotation and citation omitted).

The only disclosure that Medcqm alleges in his Second Amended Complaint is the disclosure of his first name, "Max." Without more, his first name does not constitute a "record" under the statute, as a record requires additional information, related to "education, financial transactions, medical history, [or] criminal or employment history," in addition to a name. § 552a(a)(4). And while Medcqm argues that John Doe

6

improperly accessed his information, that is different than an allegation of a disclosure. The sole allegation of disclosure refers to Medcqm's first name.

In addition, Medcqm has failed to allege an adverse effect. Medcqm alleges that during the encounter with John Doe he felt "fear and unwanted intrusion." (SAC ¶ 175.) That is not enough to establish an adverse impact. *F.A.A. v. Cooper*, 566 U.S. 284, 304 (2012) ("[T]he Privacy Act does not unequivocally authorize an award of damages for mental or emotional distress."). Medcqm also asserts that immediately after John Doe left, "two Kenya policemen came looking for [him]" and Medcqm decided to "flee Dandora slums" for his safety. (SAC ¶¶ 177-78.) Medcqm asserts that he suffered "statelessness, loss of property, loss of income, loss of future earnings, shame, humiliation, loss of reputation, [and] emotional distress" as the result of his decision to flee. (*Id.* ¶ 253.) Medcqm's assertion that John Doe's disclosure his first name led Kenyan policemen to come find him, which forced him to flee and suffer harm, is attenuated. Medcqm never spoke with the police officers. Medcqm has failed to allege a plausible connection between the disclosure and the alleged harm he suffered once he decided to flee. *Hussein v. Sessions*, No. 16-cv-780, 2017 WL 8947249, at *9 (D. Minn. Mar. 3, 2017) (dismissing claim under the Privacy Act when the defendant provided "no reasonable connection between the alleged disclosure and any of his alleged harms").

For those reasons, the Court dismisses Medcqm's Privacy Act claims.

C.   **Conspiracy Claim (Count 6)**

Medcqm also asserts a conspiracy claim against the State Department, John Doe, and Jane Doe, in their official capacities. Congress has not waived sovereign immunity

for civil conspiracy claims under § 1985.  *Little v. U.S. Dep't of Def.*, No. 21-cv-1309, 2022 WL 1302759, at *4 (E.D. Mo. May 2, 2022).  The Court therefore dismisses this claim for lack of subject matter jurisdiction.

  **D.**  **Equal Credit Opportunity Act Claim (Count 7)**

Medcqm next brings a claim under the Equal Credit Opportunity Act ("ECOA"). He outlines two alleged violations.  First, he alleges that the State Department violated the ECOA in June 2021 when Medcqm was instructed to put Somalia has his location when completing repatriation forms.  (SAC ¶¶ 114-117, 309.)  Second, he alleges that, in February 2023, the State Department granted him a repatriation loan, but he argues that the State Department should have included additional funds for medication and eyeglasses.  (SAC ¶¶ 218-23, 309.)

To state a claim under the ECOA, Medcqm must demonstrate that "(1) [he] was a member of a protected class, (2) [he] applied for and was qualified for a loan with [the State Department], (3) the loan was rejected despite [his] qualifications, and (4) [the State Department] continued to approve loans for applicants with similar qualifications." *Rowe v. Union Planters Bank of Se. Mo.*, 289 F.3d 533, 535 (8th Cir. 2002).

Medcqm fails to state a ECOA violation related to the June 2021 application because Medcqm never completed his application for a repatriation loan.  While Medcqm alleges that he began filling out the forms, he never alleges that he submitted the forms. (*See* SAC ¶¶ 114-23.)  Because he never completed the forms, his application was not rejected.

As for the February 2023 loan, Medcqm acknowledges that the State Department granted his repatriation loan but argues that the loan should have included funds for medication and eyeglasses. As the State Department notes, repatriation loans are discretionary. 7 Foreign Affairs Manual ("FAM") 371. Repatriation loans "can only be used to pay medical expenses that are necessary to stabilize a patient for medical evacuation to the United States." *Id.* Medcqm does not allege that medication or eyeglasses were necessary to stabilize him for medical evacuation to the United States.

Moreover, for both claims, Medcqm does not provide any facts that would support his allegation that the State Department approved repatriation loans for persons with similar qualifications. Medcqm's assertion that "White and Arab people are given preferential treatment" is merely speculative. (SAC ¶ 221.) "This speculation does not amount to facts asserting that the [State Department] actually approved loans for other qualified individuals." *Lundahl v. Gross*, No. 18-cv-5090, 2020 WL 927650, at *7 (D.S.D. Feb. 26, 2020). The Court therefore dismisses this claim.

### E.    Rehabilitation Act Claim (Count 8)

Medcqm also brings a claim under the Rehabilitation Act. He argues that the Embassy should have provided him with sign-language interpreters or other resources to aid him in his communication with Embassy staff. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The Rehabilitation Act applies

only to discrimination that occurs "in the United States." *Id.*; *see Straw v. U.S. Dep't of State*, No. 19-cv-2294, 2020 WL 2490022, at *13 (D. Md. May 14, 2020), *aff'd*, 813 F. App'x 108 (4th Cir. 2020); *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 216 (D.N.J. 2020). Medcqm only alleges that discrimination occurred abroad in Kenya, and the Rehabilitation Act does not waive sovereign immunity for claims of discrimination that occurred abroad. Thus, the Court dismisses this claim.

### F.  Administrative Procedure Act Claim (Count 9)

Next, Medcqm brings a claim under the Administrative Procedure Act ("APA"). Final agency actions are reviewable under the APA. 5 U.S.C. § 704. For an action to be "final," the following two-part test must be met: (1) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotations and citation omitted).

Medcqm argues that the Embassy employees' decision to refuse to provide him with auxiliary aids was a final agency action that is reviewable under the APA. (SAC ¶ 336.) The Court concludes that the Embassy employees' decisions to communicate with Medcqm via paper and pen instead of using an interpreter is not a final agency action subject to review because it did not "mark the consummation of the agency's decisionmaking process" and it was not a decision in "which rights or obligations [were] determined." *See Bennett*, 520 U.S. at 177-78.

In addition, as the State Department notes, Medcqm appears to assert a separate argument in his briefing. He argues that the State Department's decision to grant him only a three-month passport, instead of a passport valid for one year, is a final agency action. (Doc. No. 57 at 9-10.) This was not asserted in Medcqm's Second Amended Complaint. But even if the Court allowed Medcqm to further amend his complaint, this claim would be denied as moot. If the Court were to direct the State Department to reconsider Medcqm's passport application, a one-year passport would have already expired in 2022.

### G.   *Bivens* Claims (Count 10)

Medcqm remaining claims are against Jane Doe and John Doe in their individual capacities. The State Department's motion to dismiss does not include these claims, but the Court may sua sponte dismiss a case under 28 U.S.C. § 1915(e)(2)(B)(ii) if the Court determines that the case "fails to state a claim on which relief may be granted."

Here, Medcqm brings various *Bivens* claims against Jane Doe and John Doe in their individual capacities under the First, Fourth, and Fifth Amendments.

In *Bivens*, the Supreme Court "held that it had authority to create a cause of action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 596 U.S. 482, 490 (2022) (internal quotations and citation omitted). In the past fifty years, the Court has implied only two additional causes of action: "first, for a former congressional staffer's Fifth Amendment sex-discrimination claim . . . and second for a federal prisoner's inadequate-care claim under the Eighth Amendment." *Id.* at 490-91.

11

The Court has emphasized that "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Id.* at 491 (internal quotations and citation omitted); *see also Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020) (concluding that there is a "presumption against creating new *Bivens* actions").

Courts have utilized a two-step inquiry when determining whether an implied cause of action is available to a plaintiff. First, the Court must determine whether the "case presents a new *Bivens* context." *Egbert*, 596 U.S. at 492 (internal quotations and citation omitted). In other words, the Court must decide whether the case is "meaningful[ly] different from the three cases in which the Court has implied a damages action." *Id.* (internal quotations and citation omitted).

"Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (internal quotations and citation omitted). The Court has not provided an exhaustive list of special factors but has instructed "[i]f there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* at 492-93 (internal quotations and citation omitted).

Medcqm's claims are clearly different than the three cases in which the Court has implied a damages action. Medcqm claims are not related to a search and seizure, sex discrimination, or inadequate care in prison. The Court thus turns to the second prong. Here, there are significant factors that caution the Court from extending *Bivens* to a new context. Most importantly, the entirety of Medcqm's claims occurred abroad in Kenya.

12

"Congress has repeatedly declined to authorize the award of damages for injury inflicted outside our borders." *Hernandez v. Mesa*, 589 U.S. 93, 109 (2020).  The Court declines to "extend a judge-made cause of action beyond our borders." *Id.*  The Court therefore dismisses Medcqm's *Bivens* claims against Jane Doe and John Doe in their individual capacities.

### III.   Motion for Sanctions

Medcqm also brings a motion for sanctions, arguing that the State Department's counsel has "accused [him] of violating court rules while he himself has committed several serious violations."  (Doc. No. 80 at 1.)  Specifically, Medcqm asserts that the State Department's counsel has misrepresented facts to the Court.

A motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service."  Fed. R. Civ. P. 11(c)(2).  It does not appear that Medcqm served the State Department's counsel with the motion in accordance with Rule 11(c) and thus his motion is procedurally improper.  Even without considering the procedural error, the Court is unable to identify any sanctionable conduct.  The Court respectfully reminds Medcqm that "Rule 11 is a serious matter, and litigants must avoid invoking that Rule with no basis for doing so." *Jamison v. Ludeman*, No. 11-cv-2136, 2023 WL 2088302, at *2 (D. Minn. Feb. 17, 2023).

## CONCLUSION

For the reasons outlined above, Medcqm's claims against the State Department and John and Jane Doe, in their individual and official capacities, are dismissed with prejudice.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The State Department's motion to dismiss (Doc. No. [49]) is **GRANTED**.

2. Medcqm's claims against all Defendants are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 21, 2024                                         s/Donovan W. Frank
                                                              DONOVAN W. FRANK
                                                              United States District Judge